**UNITED STATES of America**

v.

**ONE 1966 FORD LTD 4–DOOR SEDAN Serial No. 6U60Y100377.**

**Civ. A. No. 2227.**

United States District Court
M. D. Georgia,
Macon Division.

Jan. 10, 1967.

Manley F. Brown, Asst. U. S. Atty., Macon, Ga., for plaintiff.

D. D. Veal, Eatonton, Ga., Joseph W. Popper, Jr., Macon, Ga., for defendant.

BOOTLE, Chief Judge:

This is a ruling on cross-motions for summary judgment. On October 27, 1966, the United States, as plaintiff, filed a civil cause of forfeiture for breach of the provisions of Section 7302 of the Internal Revenue Code of 1954, as amended. The complaint alleged that one 1966 Ford LTD 4-Door Sedan, Serial No. 6U60Y100377 had been possessed and used on July 20, 1966 and July 24, 1966, by one Griffith F. Bullock, in violation of the revenue laws of the United States in the conduct of the business of a retail dealer in liquors (distilled spirits) without having paid the special tax imposed by Section 5121(a) of the code.

On October 28, 1966, the same Mr. Bullock and a codefendant, having no interest in the controversy now under consideration were convicted by a jury on several counts of violation of the Internal Revenue Code. Mr. Bullock's conviction consisted of possession and selling of distilled spirits, the immediate containers of which did not have affixed thereto stamps evidencing the determination of the tax and compliance with the provisions of the Revenue Code, on July 20, 1966 and July 24, 1966, all in violation of Sections 5205(a) (2) and 5604(a).

At the sentencing Mr. Bullock stated:

"Your Honor, I may start off by saying this. I'm sorry to have to come into your clean court and clouded (sic) it up."

He went on to ask the court for probation saying that the court would never see him in the court again as he had "aged a lot" and "done some deep thinking."

On November 10, 1966, Mr. Bullock filed an answer and denied that the vehicle in question had been used as alleged.

On November 23, 1966, Mrs. Josephine Bullock, the wife of Mr. Bullock and the person in whose name the vehicle was registered, filed a motion for summary judgment contending that there was no genuine issue as to any material fact and that the automobile, as a matter of law, was not subject to forfeiture. The motion was based on the sworn testimony of the witnesses for the United States in the criminal case of United States v. Griffith Francis Bullock, et al., mentioned above.

In her brief the movant presented a summary of the composite testimony of two of the government witnesses and contends that the evidence taken as a whole shows that the vehicle was not "actively used" and thus was not subject to forfeiture.

On December 8, 1966 the United States filed its cross-motion for summary judgment. This motion was based solely upon the facts as set out in the first movant's motion and supporting brief but the United States argued that the testimony showed that the vehicle was used by Mr. Bullock to transport the Government informers to a particular spot so as to enable Mr. Bullock to point out where the illegal whiskey could be picked up and thus, as a matter of law, was subject to forfeiture.

In response to the United States' motion the first movant argued that as to Mr. Bullock's operation of the vehicle there was a question of intent and that as Mr. Bullock had appealed the criminal conviction to the United States Court of Appeals for the Fifth Circuit he was not "in a position" to file an affidavit denying intent.

The United States replied that the sworn testimony was what the first movant had based her motion for summary judgment upon and that if that testimony is taken as true, then, as a matter of law there can be no question that Mr. Bullock's intent was to sell illegal whiskey to the informers.

From the transcript of the criminal case it appears that on July 20, 1966, Odell Harp, a police officer not in uniform, and Jimmy Lee Chambers, a paid informer, left Macon in a Government

vehicle to make purchases of non-tax-paid whiskey. At Milledgeville they were informed that they could purchase some illegal whiskey at Mr. Bullock's fruit stand in Putnam County. They went to the fruit stand and after some conversation and checking, Mr. Bullock agreed to sell them fifty gallons of "moonshine" whiskey. Mr. Bullock then drove the two men in the 1966 Ford LTD automobile (the vehicle in question) to a farm house where he got out and talked with another man. He then drove Officer Harp and Mr. Chambers in the Ford automobile to an empty house and told them that the whiskey would be stashed behind the empty house. Then they returned to the fruit stand, got out of the Ford automobile and got into the Government vehicle where upon instructions from Mr. Bullock, Officer Harp placed the purchase money in a paper bag and handed it to Mr. Bullock. Shortly thereafter, Officer Harp and Mr. Chambers returned to the empty house pointed out to them by Mr. Bullock, loaded 48 gallons of whiskey which was hidden behind the empty house into the Government vehicle and returned to Macon where they turned the whiskey over to Government agents.

Officer Harp and Mr. Chambers returned to the fruit stand on July 24, 1966 and again arranged to make a purchase of sixty gallons of "moonshine" whiskey from Mr. Bullock. Again they all three got into the Ford automobile but this time they drove to another farm house. There, Mr. Bullock pointed out where the whiskey would be delivered to them. They then returned to the fruit stand and Officer Harp paid Mr. Bullock for the whiskey. Officer Harp and Mr. Chambers then returned to the farm house in the Government vehicle. Shortly thereafter another vehicle loaded with the whiskey drove up. The whiskey, again 48 gallons, was transferred to the Government vehicle and Officer Harp and Mr. Chambers then drove to Macon and turned this load of illegal whiskey over to the Government agents.

■ A study of the transcript discloses that there is no conflict in the testimony as to any fact relating to the "use" of the automobile by Mr. Bullock as above stated. Therefore, the matter must be determined on the undisputed facts as set forth in the testimony and these facts must be taken as true. Preveden v. Croatian Fraternal Union of America, et al., 120 F.Supp. 33 (W.D.Pa. 1954). When there is no counter-affidavit controverting a convincing showing by a movant there is no genuine issue of fact and a mere denial or holding back of evidence will not create a real controversy. Bruce Construction Corp., et al. v. United States for use of Westinghouse Elec. Supply Co., 242 F.2d 873 (5th Cir. 1957). In such a situation the granting of a motion for summary judgment is not improper as unjustly depriving a party of a trial on the merits. Cunningham v. Securities Investment Co. of St. Louis, 278 F.2d 600 (5th Cir. 1960). A summary judgment is proper in a forfeiture case. Alberty Food Products Co. v. United States, 185 F.2d 321 (9th Cir. 1950).

The only question here is whether the facts above outlined disclose such "use" of the 1966 Ford LTD automobile as to subject it to forfeiture as a matter of law.

■ This court concludes from these undisputed facts that as a matter of law the automobile in question was being used in facilitating and effecting the sale of non-tax-paid whiskey in violation of the internal revenue laws and is, therefore, subject to forfeiture.

■ A review of a few of the pertinent cases will substantiate this conclusion. The Fifth Circuit in the case of Anderson v. United States, 185 F.2d 343, on page 344 (5th Cir. 1950) stated that:

"The plain meaning of this section [26 U.S.C.A. § 3116 of the 1936 Internal Revenue Code which contained similiar provisions to 26 U.S.C.A. § 7302 of the 1954 Internal Revenue Code] is that the violation or intended violation of any valid internal revenue law or regulation relating to spirituous liquors gives rise to its operation and any property such as an automobile

which is used or intended to be used in such violation is forfeited thereunder."

Several years later the Fifth Circuit, clarifying the situations under which forfeiture is proper, adopted the "active aid" test in the case of United States v. General Motors Acceptance Corp., 239 F.2d 102 (5th Cir. 1956). The test is whether or not the act was an "active aid" in carrying out an essential element of the offense. Applying that test to the factual situation of the instant case it is clear that when Mr. Bullock agreed to sell the illegal whiskey and then transported the customers to a place and pointed out to them where the delivery would be made he did in fact use the automobile to effectuate the delivery of the "moonshine" and the act of driving the automobile for such purpose was an "active aid" in the carrying out of an essential element of the selling of non-tax-paid whiskey.

In the case of United States v. One 1960 Ford Galaxie Sedan, 203 F.Supp. 387 on page 389 (N.D.Ala.1961), the court stated that:

"A sale cannot be effected without a customer. Lending active aid to the customer, as was the case here, is in furtherance of the sale."

Earlier in the same case the court had cited the case of United States v. One 1941 Buick Coach Automobile, 85 F. Supp. 402 (S.D.Ala.1949) in which the court held that where the seller of illegal whiskey used an automobile to reach an agreed delivery place the automobile so used was subject to forfeiture even though no illegal whiskey had been transported in the automobile.

Another case in which the "use" of an automobile was similar to the use of the car in the case at hand is United States v. Lawson, 266 F.2d 607 (6th Cir. 1959). In that case an informer was transported in an automobile and an agent followed in his car to the source of supply of the illegal whiskey. Upon arrival they left the agent's car and rode around in the automobile so as not to create suspicion while waiting for the whiskey to be procured. After the whiskey arrived and was loaded in the agent's car the automobile was used to pilot the agent's car by way of back streets out of town.

The court on page 610 stated:

"Certainly an automobile is being used by a wholesale dealer in merchandise as an instrumentality of his business when it is used to convey or guide prospective customers from his own home or place of business to the place where the merchandise they seek to purchase is located and where it can be delivered to them."

The Fifth Circuit cited the *Lawson* case with approval in the case of United States v. One 1959 Pontiac Sedan, 301 F. 2d 411 (5th Cir. 1962), another case in which an automobile used to transport a customer of illegal whiskey to a pickup point was held forfeitable.

In the case of United States v. One 1962 Ford 2 Door Sedan, 234 F.Supp. 798 (W.D.Va.1964) an automobile was used to transport customers to the place of the sale and to locate another vehicle in which the illegal whiskey to be sold was being hauled. On page 799 the court held that:

"The vehicle served a special purpose but one closely and immediately related to the successful accomplishment of the overall illegal scheme and hence was forfeit to the government under § 7302."

In her brief the first movant argues that the case of United States v. Lane Motor Co., 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622 (1953) is controlling. In that case the court held that an automobile used only for transportation by the operator of an illegal distillery between his home and the still is not being "used" in violation of the internal revenue laws. This court believes that it is obvious that Mr. Bullock used the automobile in question for more than mere commuting.

■ With respect to the matter of intent, no intent is required other than that the vehicle was being used knowing-

ly and intentionally as an active aid in facilitating the possession and sale of whiskey in unstamped containers. Mc-Clain v. United States, 224 F.2d 522 (5th Cir. 1955). Here the evidence shows without conflict that the whiskey possessed and sold by Mr. Bullock was in unstamped containers and that the vehicle involved was intentionally put to the proscribed use.

Accordingly, Mrs. Bullock's motion for summary judgment is denied and the United States' motion for summary judgment is granted. Counsel may hand up an appropriate order and judgment.